Filed 7/26/24  P. v. Sandoval CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALBERT SANDOVAL,<br><br>    Defendant and Appellant. | B328032<br><br>(Los Angeles County<br>Super. Ct. No. TA132075) |

APPEAL from an order of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Affirmed.

John A. Colucci, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted petitioner Albert Sandoval of two counts of first degree murder and two counts of premeditated attempted murder. The jury also found true a multiple murder special circumstance. Sandoval unsuccessfully sought resentencing pursuant to Penal Code[1] sections 1172.6 and 1172.1.

We conclude that the resentencing court properly denied Sandoval's section 1172.6 petition at the prima facie stage. The record of conviction shows as a matter of law Sandoval was ineligible for resentencing under that statute and thus, the resentencing court properly dismissed his petition. (*People v. Curiel* (2023) 15 Cal.5th 433, 460.) We affirm the resentencing court's order.

Sandoval's challenge to the denial of his section 1172.1 petition is not cognizable on appeal because reference to the order denying it was not included in his notice of appeal. Accordingly, we do not address whether the denial of that petition would have been an appealable order or the merits of the petition.

## FACTUAL BACKGROUND[2]

"On February 9, 2014, around 3:00 p.m., [Jose] Rodriguez, [Ricardo] Garcia, [Jhony] Rodas, and Jose Tlaseca, along with some other individuals, were gathered in an alley behind an apartment building on Avalon Boulevard in Los Angeles. Some of the men were playing cards. . . . Sandoval's co-defendant [Joel Ignacio] Ambriz arrived, parked his car, and exited from the

---

[1] Undesignated statutory citations are to the Penal Code.

[2] The factual background is quoted from Sandoval's reply to the People's opposition to his petition for resentencing pursuant to section 1172.6. His counsel filed the reply in support of his petition for resentencing.

2

driver's seat.  There was at least one other person in the car. Ambriz approached the men playing cards.  Ambriz was either by himself or was accompanied by Sandoval.  Ambriz said, 'The terrain is hot.'  The men did not know what Ambriz meant by this.  Ambriz returned to his car in the driver's seat and, with Sandoval in the front passenger seat, drove away.  The men continued playing cards.

"At around 5:00 p.m., while it was still light outside, Ambriz returned, parked in the same spot as before, and got out from the driver's side of the car.  Sandoval was in the front passenger seat.

"Ambriz approached the group and yelled, 'Ciudado, cabron,' which loosely translated to English as 'Careful, son of a bitch.'  He fired several shots at the men.  Ambriz fired two or three shots from near the passenger side of the car, then moved and fired three or four shots from the rear of the car.  He moved closer to the men and fired four more shots.  When Ambriz first fired, Rodas heard Sandoval yell from inside the car something like, 'You're not gonna hit anybody' from that location and to 'get closer' or 'give it to them.'  Ambriz then moved closer to the other men and continued to shoot at them.  According to Rodas, after Sandoval shouted those words from inside the car, Ambriz got more daring in approaching the other men."

"Rodriguez died in a hospital on August 9, 2014, several months after this shooting.  He had sustained multiple gunshot wounds that caused injury to his kidney and spine, which rendered him paraplegic.  Rodriguez ultimately died from pneumonia resulting from complications caused by his gunshot wounds."

Our background does not include a description of the murder of Cesar Perea, which occurred on a different day. On appeal Sandoval does not describe that murder or challenge his sentence with respect to it.[3]

## PROCEDURAL BACKGROUND

The People charged Sandoval and Ambriz of two counts of murder (Jose Rodriguez and Cesar Perea) and two counts of attempted murder (Jhony Rodas and Ricardo Garcia). The People also alleged a multiple murder special circumstance. The murder of Perea was alleged to have occurred on or about March 21, 2013. The People also alleged firearm enhancements.

Ambriz and Sandoval were tried together. The trial court did not instruct the jury on the natural and probable consequences theory or the felony murder doctrine.

The trial court instructed the jury that to prove a person aids and abets a crime, the People must prove: "1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." The instruction further provided: "Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to,

---

[3] Sandoval states, "[S]ince the section 1172.6 petition below was focused on the convictions in counts 1 [murder of Rodriguez], 2 [attempted murder of Rodas], and 3 [attempted murder of Garcia], only facts related to those counts will be included."

4

and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of the crime."

The court instructed the jury that "malice aforethought" was an element of murder and that there were two kinds of malice aforethought—express malice and implied malice. The court then defined both express and implied malice. The court instructed the jury that murder based on express or implied malice was second degree murder.

The court instructed the jury on first degree murder as follows: "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the acts that caused death." To reiterate, the court did not instruct on any other theory of first degree murder.

The court instructed the jury that one element of attempted murder is that the "defendant intended to kill that person."

The multiple murder special circumstance instruction included the following: "In order to prove this special circumstance[ ] for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove that the defendant acted with the intent to kill."

The jury found Sandoval guilty of all crimes. Specifically, the jury found Sandoval guilty of the murders of Rodriguez and Perea and found both murders to be murder in the first degree. The jury found Sandoval guilty of the attempted murders of

Rodas and Garcia and found that both attempted murders were willful, deliberate, and premeditated. With respect to all crimes, the jury found that a principal personally and intentionally discharged a firearm causing great bodily injury and that the offense was committed for the benefit of, at the direction of, or in association with a criminal street gang. With respect to the murder of Perea, the jury found Sandoval personally and intentionally discharged a firearm, which caused death to Perea within the meaning of section 12022.53, subdivision (d). The jury also found the multiple murder special circumstance true.

In December 2018, on direct appeal, we affirmed Sandoval's convictions, struck portions of his sentence, and remanded for a new sentencing hearing. (*People v. Ambriz et al.* (Dec. 14, 2018, B279785) [nonpub. opn.].)

Following the appeal, the trial court sentenced Sandoval to two terms of life without the possibility of parole for the murders and two terms of life with the possibility of parole for the attempted murders. The court ordered the sentences to run consecutively. The court also sentenced Sandoval to a 90-year-determinate term for the firearm enhancements.

On July 2, 2021, Sandoval filed a pro se section 1172.6 petition for resentencing. He asserted that he was convicted of first or second degree murder based on the felony murder rule or natural and probable consequences doctrine. The resentencing court appointed counsel to represent Sandoval. Sandoval thereafter substituted private counsel.

The People opposed Sandoval's petition arguing he was ineligible for resentencing because the jury was not instructed on the natural and probable consequences theory or the felony murder doctrine. The People attached to their opposition this

6

court's opinion following Sandoval's direct appeal and the jury instructions.

Through his private counsel, Sandoval filed a reply to the People's opposition. Sandoval acknowledged the jury was not instructed on felony murder or natural and probable consequences. He argued, "[T]he jury likely imputed malice to him based solely on his participation in the crime . . . ." Sandoval also contended he had established a prima facie case for relief and that an evidentiary hearing had to be set.

At a hearing, the resentencing court indicated it had read the petition, the People's response, and Sandoval's reply. The court stated it also considered the transcripts of the trial. Counsel for Sandoval argued Sandoval was not the shooter "[a]lthough he was present." Counsel further argued the circumstances of this case were "similar" to "felony-murder" and that this case "falls into . . the natural and probable consequence doctrine." For those reasons, counsel argued that Sandoval established the prima facie prerequisites for resentencing. The prosecutor countered that the jury verdict shows Sandoval harbored actual malice and therefore had not established a prima facie case.

The resentencing court found Sandoval did not make a prima facie case for resentencing pursuant to section 1172.6 and denied his section 1172.6 petition. In its January 13, 2023 order, the court reiterated that it had read and considered the petition, opposition, reply, and trial transcripts. The court found, "There were no instructions given on felony murder nor any theory of natural and probable consequence and instruction was given to theories of murder and attempted murder that still exist today; actual malice; [¶] The court declines to issue an order to show

7

cause as the petitioner has not established a prima facie case that he is entitled to relief."

The court also denied defendant's section 1172.1 petition, which we describe in our Discussion, *post*.

Sandoval's pro se notice of appeal file January 19, 2023 states: "My name is Albert Sandoval. The reason I'm writing this letter because on 01-13-23 I had a hearing for 11-76 which was denied. And I am filing a Notice of Appeal. But do [*sic*] to the fact I'm currently housed in Los Angeles Men's Central Jail I Don't Have Access to the proper paper to file my Notice of Appeal so I was requesting the proper paper work or can the clerk of the court file my Notice of Appeal on record."

## DISCUSSION

### A. The Court Properly Denied Sandoval's 1172.6 Petition for Resentencing

#### 1. *Legal background*

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015) amended sections 188 and 189 of the Penal Code to 'eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting, and [to] limit[ ] the scope of the felony-murder rule.' [Citation.]" (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1173.) Amended section 188 provides that except as stated in the amended section 189 governing felony murder, " 'in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Lee*, at p. 1173, quoting § 188, subd. (a)(3).) The bill also added former

section 1170.95, now numbered section 1172.6, "which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) Relief is potentially available for "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1172.6, subd. (a).)

Petitioners may seek the relief contemplated by the statute by "fil[ing] a resentencing petition . . . alleging they could not currently be convicted of murder because of the changes in the law required by Senate Bill No. 1437." (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 891.) "If [a] petitioner ma[kes] a prima facie showing for relief, the trial court [is] required to issue an order to show cause for an evidentiary hearing." (*Ibid*., citing § 1172.6, subd. (c).) In general, the court must then "hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder . . .' under state law as amended by Senate Bill 1437." (*People v. Strong* (2022) 13 Cal.5th 698, 709.)

If the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law, the resentencing court may deny the petition at the prima facie stage. (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 970–972; *People v. Cortes* (2022) 75 Cal.App.5th 198, 206.) The resentencing court found petitioner ineligible as a matter of law, and we review de novo a petition denied at the prima facie stage. (*People v. Lee, supra*, 95 Cal.App.5th at p. 1174; *People v. Ervin* (2021) 72 Cal.App.5th

9

90, 101.)  We may rely on the record of conviction to determine whether Sandoval established a prima facie case for resentencing.  (*Lewis*, *supra*, at p. 971.)

## 2. *As a matter of law, Sandoval is ineligible for relief*

As Sandoval acknowledges, the trial court did not instruct the jury on felony murder or the natural and probable consequences doctrine.  Sandoval, however, argues the jury instructions permitted him to be convicted on imputed malice based solely on his participation in a crime.  According to him, "the instruction did not tell the jury . . . that the aider and abettor must share the perpetrator's intent to kill or must himself act with conscious disregard for life.  Absent that, it . . . allowed the jury to apply a vicarious imputation theory without the requisite intent."  The record of conviction belies Sandoval's contention.

With respect to the murder of Rodriguez, the jury necessarily found Sandoval harbored intent to kill when it found the multiple murder circumstance true.  To find that special circumstance true, the jury had to have found that the aider and abettor "acted with the intent to kill."  As set forth in our Background, *ante*, there is no merit to Sandoval's belief that with respect to the murder, the jury was not instructed an aider and abettor must have intent to kill.

Turning to the attempted murders, the trial court instructed the jury that the People must prove "[t]he defendant intended to kill that person."  Thus, the jury necessarily found Sandoval harbored the intent to kill as to those murders as well.  In short, the record of conviction shows as a matter of law that

10

Sandoval was not convicted based on a "vicarious imputation theory."

We recognize that a petitioner alleging he or she could not currently be convicted of homicide because of changes to sections 188 and 189 "puts at issue all elements of the offense under a valid theory." (*People v. Curiel*, *supra*, 15 Cal.5th at p. 462.) Other than the element of intent, Sandoval does not challenge any other element of his murder and attempted murder convictions and the record of conviction demonstrates, as a matter of law, he could not successfully mount such a challenge. For the jury to have convicted Sandoval of aiding and abetting murder and attempted murder, it necessarily found he knew "that the perpetrator intended to commit the crime," that Sandoval "intended to aid and abet the perpetrator," and that he "did in fact aid and abet the perpetrator's commission of the crime."[4] In short, the jury necessarily found all elements of direct aiding and abetting the murder and attempted murders. (See *Curiel*, *supra*, at p. 466 [describing elements of aiding and abetting murder].)

---

[4] The facts *as described by Sandoval* (in his reply brief in the resentencing court) support that he aided the murder and attempted murders by telling Ambriz to get "closer" and "give it to them." Specifically, Sandoval "yell[ed] from inside the car something like, 'You're not gonna hit anybody' from that location and to 'get closer' or 'give it to them.' Ambriz then moved closer to the other men and continued to shoot at them."

11

### 3. *Sandoval's other appellate arguments do not show a prima facie case for section 1172.6 resentencing*

Sandoval challenges the denial of his section 1172.6 petition on the ground that the resentencing court erred in relying on the transcript of the trial without notifying the parties in advance of the hearing.  Sandoval forfeited this argument by failing to object.  "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)  " 'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.  [Citation.]' [Citations.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 881.)  In any event, we have reviewed de novo Sandoval's eligibility for resentencing pursuant to section 1172.6 and found him ineligible as a matter of law.  Therefore, the alleged error in failing to provide advance notice that the resentencing court would consider the trial transcript is moot.

Sandoval argues that if the resentencing court relied on this court's prior appellate opinion for anything other than the procedural history, then the trial court would have erred.  Even if arguendo, the trial court relied on the prior opinion for more than procedural context, Sandoval forfeited any such objection by not raising it in the trial court. (See *People v. Vance* (2023) 94 Cal.App.5th 706, 714.)  Also, Sandoval would not be able to demonstrate prejudice because the jury instructions and jury verdict standing alone show as a matter of law that Sandoval is ineligible for resentencing under section 1172.6.  As we have explained above, the jury instructions demonstrate the jury could not have convicted Sandoval of special circumstance murder or

12

attempted murder without finding that he intended to kill the victims.

Sandoval appears to contend the resentencing court incorrectly applied a substantial evidence standard to evaluate the evidence at an order to show cause hearing. This argument is based on the incorrect premise that the resentencing court held an order to show cause hearing. Instead, the court's order made clear that it "declines to issue an order to show cause as the petitioner has not established a prima facie case that he is entitled to relief."

Finally, Sandoval relies on inapposite authority where, in contrast to this case, the jury did not necessarily find the petitioner harbored intent to kill. For example, in *People v. Langi (*2022) 73 Cal.App.5th 972, the court held that a petitioner convicted of *second degree* murder may have been convicted based on a theory of imputed malice where the instructions allowed the jury to find the petitioner could have intended only to encourage punching but not killing the victim. (*Id.* at p. 983.) Here, in contrast, the jury could not have concluded Sandoval encouraged only a punching, or any other crime. As explained above, the jury necessarily found that he intended to kill Rodriguez, Rodas, and Garcia.

In *People v. Maldonado* (2023) 87 Cal.App.5th 1257, the appellate court concluded a jury could have found first degree murder based on a lying-in-wait instruction without necessarily finding the petitioner harbored the intent to kill. (*Id.* at p. 1264.) *Maldonado* distinguished the lying-in-wait instruction given in that case from the "first degree premeditated murder" instruction given in the case before us, which the *Maldonado* court recognized requires intent to kill. (*Id.* at p. 1262.) Put

13

differently, that *Maldonado* found potential imputed malice based on instructions not given in the present case does not assist Sandoval.

## B. Sandoval Did Not Appeal From the Denial of His Section 1172.1 Petition

On December 12, 2022, defendant filed a petition pursuant to 1172.1 requesting that the court reduce his life without the possibility of parole sentence to a parole eligible sentence. As it existed in December 2022, section 1172.1, subdivision (a)(1) provided: "When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the Department of Corrections and Rehabilitation or to the custody of the county correctional administrator pursuant to subdivision (h) of Section 1170, the court may, within 120 days of the date of commitment on its own motion, at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of a defendant incarcerated in state prison, the county correctional administrator in the case of a defendant incarcerated in county jail, the district attorney of the county in which the defendant was sentenced, or the Attorney General if the Department of Justice originally prosecuted the case, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence." (Former § 1172.1, subd. (a)(1).)

By order dated December 15, 2022, the resentencing court denied the section 1172.1 petition for resentencing. The court's order denying the petition stated that it had no jurisdiction to act

14

beyond 120 days of sentencing and that a defendant lacks standing to bring a section 1172.1 petition.

Sandoval's appellate challenge to the December 15, 2022 denial of his section 1172.1 petition is not cognizable because the order was not identified in his notice of appeal, which referenced only the trial court's January 13, 2023 order denying his section 1172.6 petition. " ' "Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from." [Citation.] We have no jurisdiction over an order not mentioned in the notice of appeal.' [Citation.]" (*In re J.F.* (2019) 39 Cal.App.5th 70, 75.) " '[I]t is well "beyond liberal construction" to view an appeal from one order as an appeal from a "further and different order." [Citation.] "Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed." [Citation.] . . . ' [Citation.]" (*Id.* at p. 76.)

Because the court's December 15, 2022 order was not included in any notice of appeal, we do not consider Sandoval's argument that the denial of a section 1171.2 is an appealable order nor do we consider Sandoval's challenges on the merits of his 1171.2 petition.[5]

---

[5] Even if Sandoval had properly preserved his appeal as to the denial of his 1172.1 petition, he demonstrates no error in the denial of his petition. The current version of section 1172.1, which Sandoval requests this court apply, expressly states a defendant *may not* petition for resentencing under section 1172.1. (§ 1172.1, subd. (c) ["A defendant is not entitled to file a petition seeking relief from the court under this section. If a defendant requests consideration for relief under this section, the court is not required to respond."]) The former version of the statute also

15

## DISPOSITION

The order denying defendant's Penal Code section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

KELLEY, J.*

---

did not grant a defendant standing under section 1172.1 to petition for resentencing.  (Former § 1172.1, subd. (a)(1) [identifying the persons who may petition for resentencing and not including a criminal defendant].)  Sandoval further requests review of an as-applied equal protection challenge to his sentence of life without the possibility of parole.  Sandoval did not raise this challenge in the trial court and for that additional reason, has not preserved it for our review.

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.